IN THE SUPREME COURT OF NORTH CAROLINA

 2021-NCSC-27

 No. 91A20

 Filed 19 March 2021

 IN THE MATTER OF: I.R.M.B.

 Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) (2019) from an order entered on

 21 November 2019 by Judge Elizabeth T. Trosch in District Court, Mecklenburg

 County. This matter was calendared for argument in the Supreme Court on 11

 February 2021 but determined on the record and briefs without oral argument

 pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

 No brief for petitioner-appellee mother.

 J. Thomas Diepenbrock for respondent-appellant father.

 BARRINGER, Justice.

¶1 Respondent-father appeals from the trial court’s order entered on 21 November

 2019 terminating the parental rights of respondent-father to I.R.M.B. (Isabel).1 After

 a review of the record, we conclude that the trial court’s unchallenged findings of fact

 support the trial court’s conclusion to terminate respondent-father’s parental rights

 pursuant to N.C.G.S. § 7B-1111(a)(7) (2019). Therefore, we affirm.

 I. Factual and Procedural Background

 1 The pseudonym Isabel is used to protect the identity of the juvenile and for ease of

 reading.
 IN RE I.R.M.B.

 2021-NCSC-27

 Opinion of the Court

¶2 In December 2013, Isabel was born to petitioner-mother and respondent-father

 in California. Petitioner-mother and respondent-father were never married but had

 an “on and off relationship” from the time Isabel was about three months old until

 she was a year old.

¶3 During their relationship, respondent-father committed at least eight acts of

 intimate partner violence against petitioner-mother and threatened bodily harm to

 petitioner-mother before and after Isabel was born. On 10 November 2014, petitioner-

 mother obtained a temporary restraining order from the Superior Court of California,

 County of Los Angeles, against respondent-father after he hit her in the face while

 she was driving with Isabel in the back seat. Later in November, respondent-father

 was incarcerated on charges unrelated to petitioner-mother and was not released

 until April 2017.

¶4 On 2 December 2014, the Superior Court of California, County of Los Angeles,

 issued a three-year restraining order. The restraining order prohibited respondent-

 father from, among other things, directly or indirectly contacting petitioner-mother

 or Isabel. The court also issued a child custody and visitation order granting

 petitioner-mother sole legal and physical custody of Isabel and prohibiting

 respondent-father from having visitation with Isabel.

¶5 On 26 December 2014, petitioner-mother and Isabel moved from California to

 North Carolina. Petitioner-mother and Isabel entered North Carolina’s address
 IN RE I.R.M.B.

 2021-NCSC-27

 Opinion of the Court

 confidentiality program, which shielded their physical address from respondent-

 father, and petitioner-mother discontinued her digital footprint.

¶6 On 14 October 2015, respondent-father, through counsel, filed a “Petition to

 Establish Parental Relationship” in California, seeking joint legal custody of Isabel

 and reasonable, supervised visitation with Isabel. On 3 December 2015, petitioner-

 mother filed a response to respondent-father’s petition opposing joint custody and

 visitation.

¶7 On 20 June 2016, petitioner-mother filed a petition to terminate respondent-

 father’s parental rights in District Court, Mecklenburg County. Petitioner-mother

 alleged that respondent-father had never exercised visitation with Isabel pursuant to

 an informal agreement between the parties, willfully failed to provide any financial

 support to Isabel and petitioner-mother, failed to provide consistent care to Isabel or

 petitioner-mother, never provided any emotional support to Isabel, and willfully

 abandoned Isabel.

¶8 On 12 October 2016, respondent-father filed a motion to dismiss the petition

 to terminate his parental rights pursuant to Rule 12(b)(1) and (6) of the North

 Carolina Rules of Civil Procedure. He argued that North Carolina did not have

 subject-matter jurisdiction, because the child custody order was still in effect in

 California and respondent-father’s motion to modify the child custody order was still

 pending. On 23 May 2017, the District Court, Mecklenburg County issued an order
 IN RE I.R.M.B.

 2021-NCSC-27

 Opinion of the Court

 staying the termination of parental rights proceeding “pending the complete

 adjudication of the subject-matter jurisdiction issue” in the California custody

 proceeding. Respondent-father was released from incarceration in April 2017. In

 September 2017, petitioner-mother obtained a five-year extension of the California

 restraining order.

¶9 On 13 June 2018 and 13 September 2018, hearings were held in the Superior

 Court of California, County of Los Angeles, on petitioner-mother’s request for an

 order finding California a forum non-conveniens. On 23 October 2018, the California

 Superior Court ordered that California was an inconvenient forum for custody and

 visitation and ordered that all future proceedings should be filed in North Carolina.

 The parties’ case was stayed pending North Carolina’s determination of jurisdiction.

¶ 10 On 15 March 2019, petitioner-mother filed a motion to vacate District Court,

 Mecklenburg County’s 23 May 2017 order staying the termination of parental rights

 proceeding and requested the trial court enter judgment assuming jurisdiction over

 the termination of parental rights proceeding. On 3 June 2019, the District Court,

 Mecklenburg County found that petitioner-mother and Isabel reside in North

 Carolina and have significant ties to the State and concluding that it had jurisdiction

 over the subject matter and parties. Petitioner-mother’s motions were granted; the

 trial court lifted the stay and assumed jurisdiction.
 IN RE I.R.M.B.

 2021-NCSC-27

 Opinion of the Court

¶ 11 Hearings for the petition to terminate respondent-father’s parental rights were

 held on 10 and 11 October 2019. On 21 November 2019, the trial court entered an

 order concluding that grounds existed to terminate respondent-father’s parental

 rights to Isabel pursuant to N.C.G.S. § 7B-1111(a)(7). The court also determined that

 it was in Isabel’s best interests that respondent-father’s parental rights be

 terminated. See N.C.G.S. § 7B-1110(a). Respondent-father appealed.

 II. Standard of Review

¶ 12 Our Juvenile Code provides for a two-step process for the termination of

 parental rights—an adjudicatory stage and a dispositional stage. N.C.G.S. §§ 7B-

 1109, 1110. At the adjudicatory stage for termination of parental rights under

 N.C.G.S. § 7B-1111(a), the petitioner bears the burden of proving by clear, cogent,

 and convincing evidence the existence of one or more grounds. N.C.G.S. § 7B-1109(e),

 (f). If the trial court finds the existence of one or more grounds to terminate the

 respondent’s parental rights, the matter proceeds to the dispositional stage where the

 court must determine whether terminating the parent’s rights is in the juvenile’s best

 interests. N.C.G.S. § 7B-1110(a).

¶ 13 We review a trial court’s adjudication under N.C.G.S. § 7B-1111 “to determine

 whether the findings are supported by clear, cogent and convincing evidence and the

 findings support the conclusions of law.” In re Montgomery, 311 N.C. 101, 111 (1984).

 “The trial court’s conclusions of law are reviewable de novo on appeal.” In re C.B.C.,
 IN RE I.R.M.B.

 2021-NCSC-27

 Opinion of the Court

 373 N.C. 16, 19 (2019). Unchallenged findings are deemed to be supported by the

 evidence and are binding on appeal. In re Z.L.W., 372 N.C. 432, 437 (2019).

 III. Analysis

¶ 14 On appeal, respondent-father contends that (1) the trial court made findings

 of fact that were not supported by the evidence; and (2) the trial court’s findings were

 insufficient to support its conclusion that respondent-father willfully abandoned

 Isabel pursuant to N.C.G.S. § 7B-1111(a)(7).

¶ 15 Termination under N.C.G.S. § 7B-1111(a)(7) requires proof that “[t]he parent

 has willfully abandoned the juvenile for at least six consecutive months immediately

 preceding the filing of the petition[.]” As used in N.C.G.S. § 7B-1111(a)(7),

 abandonment requires a “purposeful, deliberative and manifest willful determination

 to forego all parental duties and relinquish all parental claims to [the child].” In re

 A.G.D., 374 N.C. 317, 319 (2020). The existence of willful intent “is an integral part

 of abandonment” and is determined according to the evidence before the trial court.

 Pratt v. Bishop, 257 N.C. 486, 501 (1962). “[A]lthough the trial court may consider a

 parent’s conduct outside the six-month window in evaluating a parent’s credibility

 and intentions, the ‘determinative’ period for adjudicating willful abandonment is the

 six consecutive months preceding the filing of the petition.” In re N.D.A., 373 N.C. 71,

 77 (2019) (quoting In re D.E.M., 257 N.C. App. 618, 619 (2018)).
 IN RE I.R.M.B.

 2021-NCSC-27

 Opinion of the Court

¶ 16 In support of its conclusion that grounds existed to terminate respondent-

 father’s parental rights based on willful abandonment, the trial court made the

 following pertinent findings of fact:

 19. During the course of [petitioner-mother and
 respondent-father’s relationship], at least from pregnancy
 until approximately 6 November 2014, Respondent[-
 father] committed at least eight acts of intimate partner
 violence against Petitioner[-mother].

 ....

 35. Respondent[-father]’s statements and conduct during
 that period of time [from Isabel’s birth to August 2014]
 demonstrate that he was not only unwilling to initiate
 action to establish a relationship and bond with the
 juvenile, but that he would use power and control tactics to
 intimidate and threaten Petitioner[-mother]. Oftentimes
 his contact with Petitioner[-mother], while shrouded in a
 motivation to visit with juvenile, ultimately served the
 purpose of threatening and intimidating her.

 ....

 41. Respondent[-father] continued to initiate contact with
 Petitioner[-mother] by text message cursing her, and
 denigrating her actions . . . .

 ....

 44. In response, Petitioner[-mother] again stated in a text
 message that she didn’t feel safe and felt that the juvenile
 was at risk of exposure to the violence.

 45. Ultimately, on or about November 10, 2014,
 Petitioner[-mother] sought and obtained a temporary
 restraining order; Respondent[-father] was served with
 same on November 11, 2014.
 IN RE I.R.M.B.

 2021-NCSC-27

 Opinion of the Court

46. A hearing was held on December 2, 2014, but
Respondent[-father] did not attend because he was
incarcerated and in the custody of law enforcement at the
time of that hearing.

47. Petitioner[-mother] obtained a permanent restraining
order that remained and was in effect for a period of three
years.

48. Pursuant to that restraining order, Respondent[-
father] was prohibited from having any contact with
Petitioner[-mother] or with the juvenile. Respondent[-
father] was also prohibited from having visitation with the
juvenile.

49. While the order prohibited third-party efforts to obtain
Petitioner[-mother]’s address or to establish contact with
her, the order did not, or would not have prohibited
Respondent[-father] from initiating court proceedings or
seeking the assistance of legal counsel to establish a
custody arrangement, or visitation with the juvenile.

50. On or about December 26, 2014, Petitioner[-mother]
moved from the State of California where she and
Respondent[-father] both lived, and where the juvenile was
born; she did this in order to establish a safe home for the
juvenile and also to establish herself in a location where
she would have family support and be able to seek
employment free from Respondent[-father]’s harassment
and threats to disrupt her employment. She also sought
and was granted protection through a victim protection
program that shielded her address from Respondent[-
father].

51. Respondent[-father] voluntarily submitted himself to a
law enforcement entity to serve a prison sentence and he
was incarcerated from November 2014 until sometime in
April of 2017.

52. During the time while incarcerated, on or about 11
February 2015, Respondent[-father] sent Petitioner[-
 IN RE I.R.M.B.

 2021-NCSC-27

 Opinion of the Court

mother] and the juvenile a Valentine’s Day card. It was
sent to Petitioner[-mother]’s previous address she had in
the State [of] California prior to moving in December 2014,
and the card was forwarded to Petitioner[-mother]’s
address in Charlotte, NC. That [was] the only attempt
Respondent[-father] made to establish contact with the
juvenile, or to facilitate a parental bond and relationship
with her.

53. Respondent[-father], through legal counsel during and
while incarcerated in the State of California, initiated an
action for custody and to establish paternity in November
2015 in the State of California.

54. Petitioner[-mother] was served with a Summons and
other legal documents from that action. She retained legal
counsel and provided her address both to her legal counsel,
to the court, and to Respondent[-father]’s legal counsel.

55. The question of whether the State of California could
or should exercise jurisdiction over this custody matter was
at issue; but nevertheless Respondent[-father] through
legal counsel made no efforts to inquire about the juvenile’s
wellbeing; to request an opportunity to establish a bond or
relationship with her either through letters, photographs,
or to provide support for the juvenile directly or through a
third-party. There was no evidence that Respondent[-
father] was unable to provide any kind of emotional or
material support to the juvenile from November 2015,
when he initiated the paternity and custody action in the
State of California, until the petition to terminate his
parental rights was filed in the State of North Carolina.

56. The court finds that Respondent[-father]’s conduct
even after the petition to terminate his parental rights was
filed is relevant because it infers willfulness in his failure
to initiate contact, inquire about the wellbeing, to attempt
to provide any kind of material or emotional support to the
juvenile during the 6 months immediately preceding the
filing of the petition.
 IN RE I.R.M.B.

 2021-NCSC-27

 Opinion of the Court

57. Even after the petition to terminate parental rights
was initiated and continuing until the date of trial,
Respondent[-father] has never made any effort in any way
to seek information about juvenile’s wellbeing—i.e., about
what she does, what she’s interested in, whether she’s in
school, to understand her personality, to ascertain her
needs. Indeed, he has made no effort to provide any kind of
emotional support to her and/or any kind of material
support to the juvenile, or to Petitioner[-mother].

58. Nor has Respondent[-father] demonstrated any efforts
since his release from prison in 2017 that shows a desire to
seize the opportunity to be in a relationship that inures to
the biological connection that Respondent[-father] has with
the juvenile.

59. Respondent[-father]’s conduct, even since his release
from custody in 2017, demonstrates his failure to inquire
about, his failure to seek a bond and connection with, or to
provide any kind of emotional and material support for the
juvenile during the six months immediately preceding the
filing of the petition evinces a willfulness and that he
willfully abandoned his opportunity to seize the
parent/child relationship, and his duties to provide for her
emotionally and materially.

 Respondent[-father]’s Objection

60. Respondent[-father], through his attorney of record,
objects to the court’s findings that Respondent[-father]
willfully refused to communicate or seek information about
the juvenile while the Permanent Restraining Order was
in effect.

 Specific Finding in Response to Noted Objection

61. Respondent[-father]’s constraints to establishing a
bond or maintaining contact with the juvenile were erected
and created as a result of his own unlawful misconduct.
Specifically, Respondent[-father] committed repeated acts
of violence, harassment and intimidation against
 IN RE I.R.M.B.

 2021-NCSC-27

 Opinion of the Court

 Petitioner[-mother] in [the] year 2014. And, as a result,
 Petitioner[-mother] sought a[nd] received a permanent
 domestic violence protective order against him. In addition,
 Respondent[-father]’s other criminal conduct resulted in
 his incarceration from November 2014 through April 2017.
 But, despite those constraints which were created as a
 result of his own misconduct, there were things
 Respondent[-father] could have done either through legal
 counsel or by pursuing other litigation to inquir[e] about or
 seek a bond with the juvenile that he did not do.

 62. And, so this court finds and concludes as a matter of
 law that Petitioner[-mother] has proven by clear cogent
 and convincing evidence grounds to terminate
 Respondent[-father]’s parental rights by willful
 abandonment pursuant to N.C.G.[S.] § 7B-1111(a)(7).

¶ 17 First, we address respondent-father’s preliminary argument that a portion of

 finding of fact 59 and finding of fact 62 are improperly characterized as findings of

 fact. We agree as to finding of fact 62. However, the challenged portion of finding of

 fact 59, stating that respondent-father’s conduct “evinces a willfulness and that he

 willfully abandoned his opportunity to seize the parent/child relationship, and his

 duties to provide for [Isabel] emotionally and materially” is a finding of fact. This

 Court has recognized that when addressing termination of parental rights appeals,

 “[t]he willfulness of a parent’s actions is a question of fact for the trial court.” See In

 re K.N.K., 374 N.C. 50, 53 (2020).

¶ 18 Next, we consider whether the unchallenged findings of fact support the trial

 court’s conclusion to terminate his parental rights based on willful abandonment

 pursuant to N.C.G.S. § 7B-1111(a)(7). Because we conclude the unchallenged findings
 IN RE I.R.M.B.

 2021-NCSC-27

 Opinion of the Court

 of fact support the trial court’s conclusion to terminate respondent-father’s rights

 pursuant to N.C.G.S. § 7B-1111(a)(7), we need not consider respondent-father’s

 challenge to findings of fact 56, 57, 58, and 59. Additionally, all the challenged

 findings of fact address respondent-father’s action or inaction outside the

 determinative period—after the filing of the petition for termination of rights.

¶ 19 While respondent-father contends his conduct did not evince a settled purpose

 to forego all parental duties or to relinquish all parental claims to Isabel given that

 the restraining order precluded contact with Isabel and petitioner-mother, this

 argument is unavailing given the unchallenged findings of fact before the Court. As

 in In re E.H.P., 372 N.C. 388, 394 (2019), the findings of fact show that respondent

 was aware of his ability to seek legal custody and visitation rights as Isabel’s father

 and how to obtain such relief despite the limitations of the restraining order and his

 incarceration. He filed such a petition before the determinative period began on 20

 December 2015 but took no further action during the determinative period.2 He also

 did not provide any emotional or material support during the determinative period

 even though he could have. A respondent’s action before the determinative period

 2 While respondent-father argues his “actions of maintaining and pursuing the
 parentage, custody and visitation action he filed in October 2015 demonstrated his desire to
 have a relationship with his daughter,” he has neither contested the relevant trial court
 findings of fact nor cited evidence presented at trial or testimony that support this argument.
 Petitioner-mother’s undisputed testimony is that while respondent-father filed the
 referenced petition in California, it was taken off calendar and respondent-father took no
 further action to get the case back on the calendar or resolved. Petitioner-mother explained
 that all actions to reach a resolution were initiated by her.
 IN RE I.R.M.B.

 2021-NCSC-27

 Opinion of the Court

 “are also relevant in interpreting whether his conduct during the window signified

 willful abandonment.” In re E.B., 375 N.C. 310, 320 (2020). Respondent-father’s

 actions as found by the trial court, which led to the entry of the restraining order,

 further supports a reasonable inference of willfulness for purposes of N.C.G.S. § 7B-

 1111(a)(7). As a result, we affirm the trial court’s order terminating respondent-

 father’s parental rights.

 IV. Conclusion

¶ 20 The trial court’s unchallenged findings of fact supported the trial court’s order

 terminating respondent-father’s parental rights pursuant to N.C.G.S. § 7B-

 1111(a)(7). Accordingly, we affirm.

 AFFIRMED.